*JOHNSON & AL. vs. INERARITY & AL.*

APPEAL from the court of the first district.

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

When the plaintiff fails to make out his proof, there must be judgment of dismissal or nonsuit.

PORTER, J. delivered the opinion of the court. The petition in this case contains two distinct demands against the defendants, which are presented in the common law form, by separate counts. The first demands of them $130,000, and the second $200,000, on the following grounds:

That the defendants are surviving partners of the commercial firm of John Forbes & co. late of West Florida; and that the firm of Panton, Leslie & co., merchants and traders in the late Spanish province of West Florida, was composed of five partners, to wit. Wm. Panton, Thomas Forbes, ——— ———, Forrester, and Gen. Alexander M‧Gilveray, of the Creek nation. That M‧Gilveray died in November, 1791; and that the profits up to the time of his death amounted to upwards of $250,000.

That, at the dissolution of the said firm of Panton, Leslie & co. the firm changed to that of John Forbes & co. who assumed all the debts due by the aforesaid house of Panton, Leslie & co., and who took and received all the debts due the said firm, at a certain per

cent. discount. That, in the month of October, 1806, there was a balance due the estate of M'Gilveray by Forbes & co. of $53,000, which with ten per cent interest now amounts to a larger sum than $130,000, and that the heirs of M'Gilveray, for a good and valuable consideration, have legally assigned to the plaintiffs all their interest and right in the debts thus due by Forbes & co.

East'n. District.
*June* 1825.

JOHNSON & AL.
vs.
INERARITY
& AL.

That John Forbes died in the year 1823, and the defendants, who are surviving partners of the house of Forbes & co. are responsible for the sum aforesaid.

The second count alleges the defendants' liability, by reason of the Seminole Indians having sold to the house of John Forbes & co. successors of the firm of Panton, Leslie & co. a large quantity of land, to pay a debt due to the latter. And to the one-fifth portion of which, or the proceeds arising from the sale thereof, the heirs of M'Gilveray, in right of their father, who was a partner in the house of Panton, Leslie & co. are said to be entitled.

To this petition, the defendants plead;

1. A general denial of every fact alleged in the petition.

2. A special denial that the defendants, or

East'n. District,
June 1825.

JOHNSON & AL.
vs.
INERARITY
& AL.

either of them, ever undertook, assumed, or promised to pay any debt which Paton, Leslie & co. or John Leslie & co. or any of the partners, or persons composing the said commercial house, or either of them, might owe to Alexander M'Gilveray, or to his heirs or representatives.

3. That the document under which the plaintiffs claim is not good or valid in law, because it attempts to sell a contested or litigious right, and because no lawful or valuable price or consideration was ever paid for the same.

On these pleadings, the parties went to trial in the court below, and the judge being of opinion the equitable plaintiff had not established his right to bring suit, gave judgment dismissing the petition. The plaintiffs appealed.

The point on which the court below decided the case, together with many others, have been argued with great care and attention in this; but the opinion we entertain on the merits of the case, as it appears in evidence before us, renders it unnecessary to examine the other questions, which have been raised and discussed.

The defendants, we have already seen, are

not charged in the petition with having been
partners in the house of Panton, Leslie & co. of which M‘Gilveray, under whom the plain-
tiffs claim, was a member.

This responsibility is charged, on the ground that the house of John Forbes, & co. of which the defendants are members, did, at the dissolution of the firm of Panton, Leslie & co. succeed to all its obligations active and passive, and that among the latter, was one of $53,000, to the estate of Alexander M‘Gilveray, which Forbes & co. assumed to pay.

This responsibility is expressly put at issue by the answer: there is a special denial in it, that the defendants, or either of them, ever undertook, assumed, or promised to pay any debt, which Panton, Leslie & co. or any of the partners of said firm owed M‘Gilveray, his heirs, or representatives.

Our enquiry, therefore, is, has that responsibility been established?

To prove it, the most important, nay, we might almost say, the only evidence produced, is a journal, which is brought into court by the defendants, under a rule directing them to produce the account books of John Forbes & co. and Panton, Leslie & co.

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

Before examining the particular entries, found in that book, and whether or not they establish the liability of the defendants, in the manner and to the extent, which the plaintiffs allege, it becomes important to ascertain whose book it was. If that of John Forbes & co. all that is written in it is evidence against the defendants. If that of Panton, Leslie & co: it is not, unless some other part of the evidence shews these firms to be so closely identified, that their property, interest and responsibility, were the same. Nothing, however, of that kind appears to take the case out of the general rule.

On this point, it is unnecessary to recur to the internal evidence, which the book itself presents, for we have express and positive testimony. Gordon, swears, in the evidence which he gave before the book was produced, that the entry on which the plaintiffs rely, was in the journal of Panton, Leslie & co.: after the production of the book, he again states it to be one of the journals of that firm.

But the plaintiffs insist, that even admitting this book to have belonged to Panton, Leslie & co., still it makes evidence against the defendants, because the entries in it, charging the

house of John Forbes & co. with the sum due
the late Alexander M'Gilveray, were made in
the journal under the eye, and with the appro-
bation of the members composing the firm of
Forbes & co.

East'n District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

The journal, in which the entry relied on is
found, is, as we have already stated, that of
Panton, Leslie & Co. It commences in the year
1796, and the daily entries in it close in the
latter part of the year 1798. Those which
succeed, are few in number, and general in
their nature, and seem to have been made (as
far as we can gather from an inspection of
them) from time to time, as the transactions,
which had commenced during the period the
partnership was in active operation, came to
a close, or as the results in the other branches
of the firm were ascertained. These entries
continue at intervals up to 1806, at which date
the books appear to have been closed. Among
other accounts of a general denomination to
which charges are made, and credits given,
we frequently find that of "old concern," and
"new concern," and these two partnerships, or
perhaps, more properly speaking, modifica-
tions of the same firm, seem to have had an im-
mediate and direct concern with each other.

Eas'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

though not a perfect identity of interest. A-mong the last entries in the journal, the old concern is debited with the sum of $287,000, and three persons, to wit: William Panton, Thomas Forbes, and John Leslie, are credited with this amount.

Immediately succeeding these entries, there is a note by John Forbes, as executor of the three persons just mentioned, in which he states that he is convinced from various reasons, that Alexander M'Gilveray, was a partner in the house of Panton, Leslie & co., up to his death, and that his heirs are entitled to a share in the profits of the firm up to that time. He therefore, proceeds to charge each of the three partners with the portion of the profits, which he conceives Mr. M'Gilveray's succession is entitled to, and credits the latter with the amount. One of the defendants, who was executor to Panton, as soon as he discovered this principle had been acted on, in settling the affairs of Panton, Leslie & co., entered his protest against it on the books, but agreed the matter should remain *in statu quo*, until the case could be submitted with proofs to the lord chancellor of England. In a subsequent entry, we find William Panton, Thomas Forbes and

John Leslie, are made debtors to the new con-
cern in the sum of $209,000, and to M'Gilve-
ray's estate in that of $42,000.

From these facts as thus disclosed, the plain-
tiffs reason thus. The old concern was Pan-
ton, Leslie and co.; the new concern was John
Forbes & co.; and, it appears, all the property
of the former passed into the hands of the
latter.

Now, whatever may be the real state of the
case, there can be no doubt that these assertions
when tested by the evidence, appear entirely
gratuitous. There is no evidence. that Forbes
& co. were meant by the term "new con-
cern." There is on the contrary, evidence
the other way. The book, it must not be for-
gotten, is that of Panton, Leslie & co. The
entries, made in it, were to be posted into its
ledger, and for the settlement of its affairs.
Now, the accounts opened for "new concern,"
and "old concern," in which profits and losses
were posted up and balanced, were entirely
concerns, in which Panton, Leslie & co., had
an interest. It follows, then, that if John Forbes
& co. were meant by the term "new concern,"
Panton, Leslie & co., had an interest in the
house of John Forbes & co., but this all the

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

evidence in the cause contradicts. It is more than probable, the opening of accounts under these heads, in the books of Panton, Leslie & co., was rendered necessary, by the changes which took place, in consequence of the deaths of members of that firm, and the introduction of others previous to its dissolution. At all events we find, so *far back as the year* 1796, *an account opened in private for the* " *old concern*." This shews at that time there were certain interests which it were necessary to keep separate, and that they were designated by that term, in opposition to those which were then the "new concern." When therefore, the executors of the partners of that firm were posting up and closing the book, in 1806, they must be understood to use these expressions in relation to the interests and parties, which these expressions were first applied to in the books, or in other words, that the "old concern," and "new concern," at the close, were the same "old concern," and " new concern," whose interest for so many years had been kept separate and a part. If this be true, and we do not see how it can be doubted, then the "new concern" was in existence and had debit and credit on the books of Panton, Leslie & co., years before

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

the house of John Forbes & co. was formed. This appears a powerful argument, against the conclusion of the plaintiffs, that Forbes & co., were meant by the expression " new concern." For no reason has been given, or evidence introduced, to induce us to conclude, that the term, after having been used for a length of time in relation to persons other than Forbes & co.' was afterwerds shifted to them.

The claim set up in the second count was abandoned in argument. The evidence is clear, that the lands were given in payment of debts, contracted after M'Gilveray had ceased to be a partner, in the house of Panton, Leslie & co.

We conclude our remarks, on this part of the case, by repeating, that whatever may be the real nature of the transactions, between the different firms which succeeded each other in this business in Pensacola, the evidence before us totally fails in supporting the plaintiffs' pretentions, and *de non apparentibus, et non existentibus eadem est lex.*

But, admitting with the defendants, that the house of Forbes & co. succeeded to that of Panton, Leslie & co. and became bound to pay their debts; still the claim of the petitioners

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY
& AL.

cannot be sustained. For it was the debts due by Panton, Leslie & co. at the time of the dissolution of that firm they became responsible for. Now the claims, which M·Gilveray might have had in the profits of a former partnership under the same name, which had expired seven years before, formed no part of the debts of the new firm of Panton, Leslie & co. The surviving members, of the old firm of which M·Gilveray was a partner, owed him in their individual capacity his share of the profits. But their being indebted to him did not make any new partnership they might enter into, his debtor, nor give him a right to claim a share in any of the property which composed the stock of that partnership. His demand, or the demands of his heirs, should be directed against the heirs and representatives of his co-partners, who composed the firm of Panton, Leslie & co. at the time he withdrew from it, or ceased to be a member by his death.

On the whole, we conclude, there is no evidence the house of John Forbes & co. ever assumed to pay the heirs of M·Gilveray, their claims in the firm of Panton, Leslie & co. No evidence the funds of that firm ever passed with all its debts active and passive into the

East'n. District.
*June* 1825.

JOHNSON & AL.
*vs.*
INERARITY & AL.

hands of Forbes & co. and that, even if they had, they would raise no obligation in favor of the petitioners, their claim being against the former partners of M'Gilveray in their individual capacity, not against any new firm they might have subsequently entered into.

This opinion renders it unnecessary to examine any of the bill of exceptions taken on the trial. And it is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Johnson, Hennen, Ripley and Waggaman* for the plaintiffs, *Workman, Grymes and Eustes* for the defendants.